1
2
3
4

```
[ ]  EXPEDITE
[ ]  Hearing is set:
      Date:      _____
      Time:      _____
      Judge/Calendar:  _____
[ ]  No hearing currently set
```

5

6

7                                                 Judge Ronald B. Leighton

8

9                          UNITED STATES DISTRICT COURT
10                        WESTERN DISTRICT OF WASHINGTON
                                      AT TACOMA
11

12   ANDRE THOMPSON, a single man; and
     BRYSON CHAPLIN, a single man,
13                                              NO.  3:18-cv-05267

14                          Plaintiffs,

15                   vs.

16                                              DECLARATION OF SUNNI KO

17   CITY OF OLYMPIA,  a local government
     entity; and RYAN DONALD and "JANE
18   DOE" DONALD, individually and the
     marital community comprised thereof,
19

20

21                          Defendants.

22

23   DECLARATION OF SUNNI
     KO                                          DAVIES PEARSON, P.C.
24   Page 1                                           ATTORNEYS AT LAW
     ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet    920 FAWCETT -- P.O. BOX 1657
25   files\content.outlook\bunrarg1\decl ko final exhibits revised.doc          TACOMA, WASHINGTON 98401
                                                       TELEPHONE (253) 620-1500
                                                       TOLL-FREE (800) 439-1112
26                                                     FAX (253) 572-3052

1

2

**COMES NOW** Sunni Ko, under penalty of perjury, and deposes and testifies as follows:

3

4

1.      I am one of the attorneys of record for Plaintiffs Bryson Chaplin and Andre Thompson in this matter, I make this declaration based upon personal knowledge, and I am competent to make the same.

5

6

7

8

2.      On May 21, 2015 around 1:00 a.m., Mr. Bryson Chaplin was caught attempting to steal a box of beer from Safeway grocery store located in Olympia Washington.  While fleeing from security, Mr. Chaplin threw the box in the direction of one of the store security officers.  ***Attached as Exhibit "1" is a true and correct copy of Transcript of Radio Transmission and Call Date Record (CAD),  at p. 1.***  Though Mr. Andre Thompson was not involved the attempted theft, he too fled before the police arrived.

9

10

11

12

13

14

3.      Radio dispatch reported that two black men had fled the area heading towards the fuel station both with skateboards and one wearing a baseball cap. ***Ex. "1", at p. 1.***

15

16

17

3.      Seven officers responded to investigate, including a K-9 officer with his patrol dog.  ***Attached as Exhibit "2" is a true and correct copy of Transcript of Officer Donald's Testimony, at p. 142.***  Though Officer Donald knew there were seven other officers responding to the theft incident, Officer Donald who was on duty in the

18

19

20

21

22

23

**DECLARATION OF SUNNI KO**
Page 2
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

24

25

26

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

downtown sector of Olympia left his post to assist in the investigation. ***Ex. "2", at p. 141.***

4.    After an extensive search of the two black men with skateboards, the other officers halted their investigation; Officer Donald did not. ***Attached as Exhibit "3" is a true and correct copy of Transcript of Officer Donald's Interview with Detective Claridge, dated May 26, 2015, at p. 5.*** He continued to roam the area looking for the two suspects in question. ***Ex. "3", at p. 5.***

5.    At 1:14:57, Officer Donald reported to dispatch that he had spotted the two men on Cooper Point Rd with skateboards "matching the description the victim gave walking northbound along Cooper Point Rd on the west side of the roadway." ***Ex. "1", at p. 1 (CAD); Ex. "2", at p. 174.***

6.    Shortly thereafter, Officer Donald pulled over his patrol vehicle on the southbound shoulder of Cooper Point Rd.  The area is residential with no street lights and "very dark"; almost "pitch black", according to Officer Donald. ***Ex. "2", at p. 176; Ex. "3", at p. 5.***

7.    Though Officer Donald's patrol vehicle was not equipped with a light bar on top of the vehicle, is was fully loaded with emergency lights capability on the inside of the vehicle, in the headlights, on all the windows, on the sides, in front "grill guard", and in

**DECLARATION OF SUNNI KO**
Page 3
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

the taillights. *Ex. "2", at pp. 116 – 118, 122.* The vehicle also had two spotlights mounted on either side of the vehicle. *Id.* Officer Donald, however, did not turn on any of his emergency lights. *Ex. "2", at p. 179.* He chose to turn on only his drivers' side spotlight, so that he could have it "pointing at them illuminating them." *Ex. "2", at p. 183.*

8.      Officer Donald was equipped with a .45 caliber handgun with 1 bullet in the chamber and 10 in the magazine, as well as two spare magazines for a total of 31 rounds. *Ex. "2", at p. 110.* As an added protection, Officer Donald also had on his person a .380 caliber handgun. *Ex. "2", at p. 115.* Additionally, he had at his disposal a "less-lethal shotgun" with bean-bag rounds inside his vehicle, as well as an AK15 rifle. *Ex. "2", at p. 126.*

9.      Other equipment on his belt consisted of a Taser, a flashlight, pepper spray, and a knife. *Ex. "2", at pp. 111, 113, 114, 134.* The Taser was capable of deploying probes up to 21 feet. *Id., at p. 134.*

10.     The one equipment he was supposed to have but did not have according to Officer Donald was his standard issued ASP baton, contrary to office protocol. He had no explanation as to why or how he did not have his baton during the incident in question. *Ex. "2", at p. 113.*

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

11.    After stopping his patrol vehicle, without identifying himself, Officer Donald exited his patrol vehicle from the driver's side, stood in the "door jam" and stated, "Hey, gentlemen.   Have a seat near the front of my car or near the push bars," according to Officer Donald. *Ex. "2", at p. 186.*

12.    Because Officer Donald did not turn on his emergency light, turned-on only his spotlight and failed to identify himself, Mr. Thompson believed it was perhaps a campus security officer wanting to make contact. *Attached at Exhibit "4" is a true and correct copy of Declarations of Andre Thompson, dated December 2, 2018, p. 2.*   Wanting to avoid any kind of an encounter, Mr. Thompson and Mr. Chaplin began crossing Cooper Point Rd when Mr. Thompson heard a male voice yell, "Stop" "Olympia Police." *Ex. "4", at p. 2.*   Mr. Thompson began running north with Mr. Chaplin following close behind when he heard multiple gunshots. *Id.*

11.    Though Officer Donald had at least four less-lethal weapons at his disposal – the OC spray, his Taser, the knife, and the bean-bag shotgun, within three (3) minutes of the two men being spotted on Cooper Point Rd, Officer Donald had used deadly force by discharging his weapon numerous times at Mr. Chaplin and Mr. Thompson. *Ex. "A".*

**DECLARATION OF SUNNI KO**
Page 5
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet
files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

12.    When other officers arrived at the scene, they found Mr. Bryson Chaplin unresponsive and Mr. Andre Thompson in complete disbelief he and his brother had been shot. ***Attached as Exhibit "5" is a true and correct copy of the Transcript of Officer Paul Evers, p. 3.***

13.    During a preliminary walk-through of the scene, officers noted Officer Donald's patrol vehicle facing south on the southbound shoulder of Cooper Point Rd  with only its headlights and the driver's spotlight on, though the area was almost "pitch black" with no other light source. ***Attached as Exhibit "6" is a true and correct copy of Photos of Scene.***

14.    To the rear of the patrol vehicle, officer observed three bullet impacts in the concrete surface northeast of the rear of the patrol vehicle. ***Attached as Exhibit "7" is a true and correct copy of Photo of the Scene***.

15.    On the passenger side of the patrol vehicle on the tall grassy strip adjacent to the fence line, after the grass was mowed down to road level, police located three cartridge casings hidden amongst the grass. ***Attached as Exhibit "8" is a true and correct copy of Photo of the Scene Noting Markers 23, 24 and A.***  A fourth casing was found near the right rear bumper of the patrol vehicle.   ***Attached as Exhibit "9" is a true and correct copy of Photo of Scene, Marker 2***.  Police later determined Officer Donald had fired his weapon four (4) times near his patrol vehicle.

16.    Further north of the patrol vehicle, police found an overturned recycling bin and a skateboard next to the edge of the road. ***Attached as Exhibit "10" is a true and correct***

**DECLARATION OF SUNNI KO**
Page 6
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

1   *copy of Photo and Diagram to Scale*.  Past the house located west of the centerline,

2   police found more spent casings and a discarded gun magazine with unspent cartridges in

3   the middle of the road.  *Ex. "10"*.  Police also noted bullet holes in one of the upstairs

4   bedroom window and the fence facing north on Cooper Point Rd.  *Id.*

5   17.   Forensics later determined Officer Donald had fired his weapon a total of eleven

6   (11) times – four (4) times near his patrol vehicle (first volley of shots), four (4) times at

7   Mr. Chaplin next to the fog line with one of the bullets re-entering Mr. Chaplin's right

8   arm, and three (3) times at Mr. Thompson, one (1) bullet striking Mr. Thompson, one

9   bullet striking an upstairs bedroom window, and one bullet striking a fence.

10  18.   At St. Peter Hospital, Mr. Chaplin was determined to have sustained multiple

11  gunshot wounds, one bullet shattering his spinal column.  *Attached as Exhibit "11" is as*

12  *true and correct copy of Mr. Chaplin's partial Medical Records from St. Peter*

13  *Hospital*.  A bullet had struck his 11th spinal vertebrae, shattering the vertebral column

14  and injuring his spine with a fragment lodging next to the column.  Mr. Chaplin was

15  immediately airlifted to Harborview Medical Center and was told he would never be able

16  to walk again.

17  19.   Five days later, on May 26, 2015, Officer Donald gave his first interview with

18  Detective Sergeant David Claridge of the Thurston County Sheriff's Department.   He

19  brought with him a ten-page typed statement detailing what he claim occurred.  *Attached*

20  *as Exhibit "12" is a true and correct copy of Officer Donald's Typed Statement.*

21

22

23  **DECLARATION OF SUNNI KO**

24  Page 7
    ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet
25  files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

26

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

20.    Shortly thereafter, based on Officer Donald's allegations, without ever interviewing the forensic officers from the Washington State Patrol Crime Laboratory, without examining the crime scene to understand the location of the spent cartridge casings in relation to the bullet strikes, without understanding how quickly Mr. Chaplin's spinal injury would have been incapacitating, Olympia PD arrested  Mr. Chaplin and Mr. Thompson for two counts of Assault in the Second Degree with a deadly weapon. *Attached as Exhibit "13" is a true and correct copy of the Information*.  The charges alleged Mr. Chaplin assaulted Officer Donald by creating reasonable apprehension of fear with a skateboard (a deadly weapon) and that Mr. Thompson acted as his accomplice during the commission of the crime. *Ex. "13".*

21.    In preparation for trial, Officer Donald later participated in two defense interviews.  *Attached as Exhibit "14" is a true and correct copy Interview Notes Dated 04/20/16 and Transcript of Defense Interview Dated 07/29/2016.*  During his interview, Officer Donald repeatedly refused to clarify where he was or the direction of fire in relation to his patrol vehicle. *Ex. "14", Transcript of Defense Interview at pp. 692-93.*

22.    In May 2017, almost two years after the incident in question, the matter proceeded to trial.

23.    During trail, Officer Donald stated he had extensive training in how to defend himself – "from basic training until leaving the army . . . from the day [he] started until [he] was out," –  both in the military and as a police officer. *Ex. "2", at p. 492.*  He boasted of his ability for being "prepared for the unexpected." *Ex. "2", at pp. 375-76.*

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

1   He testified he learned over the years through training and experience how to keep calm

2   and to keep his senses heightened. *Id., at pp. 376-77.* He testified he had countless one-

3   to-one confrontations, both in the military and while working as a loss prevention officer

4   at Macy's. *Id., p. 379.* Yet he claimed that he was caught totally by surprise *(Id., at p.*

5   *210)* and was unable to defend himself from Mr. Thompson's skateboard attack. *Id., at*

6   *pp. 210, 215 - 16, 225 – 26.*

7   24.    Though his personnel record show that Officer Donald show no reluctance in

8   engaging in hand-to-hand confrontations with arrestees, he claimed he was able defend

9   himself from Mr. Thompson. *Attached as Exhibit "15" is a true and correct copy of*

10  *Officer Donald's Type of Force Record.* Officer Donald testified he "may have"

11  grabbed Mr. Thompson or could have "attempted to get away from grasp" as Mr.

12  Thompson grabbed him, forced his head toward the ground, and spun him around. *Ex.*

13  *"2", at p. 441.*

14

15  25.    Officer Donald's other records also reveal this incident was not the first time

16  Officer Donald did not wait for backup before deciding to take the situation into his own

17  hands and using force while responding. On April 13, 2013, Officer Donald made the

18  decision to go "'hands on'" with an suspect, exposing himself to attack from other

19  suspects who were present, rather than wait for back-up, "contrary to contemporary police

20  practices and current Department training." *Attached as Exhibit "16" is a true and*

21

22

23  **DECLARATION OF SUNNI KO**
24  Page 9
    ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet
25  files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

26

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

*correct copy of Memorandum from Sgt. Allen.*    Unfortunately, there is no record of Officer Donald receiving further training in how to avoid using force to apprehend suspects, how to deescalate hostile situations, and how to exercise good judgment and wait for backup before the shooting incident in question on May 21, 2015. *Attached as Exhibit "17" is a true and correct copy of Officer Donald's Training Records.*

26.    For simplicity and brevity, a chart for the Court's use is listed below to demonstrate Defendants' allegations versus the extensive contradictory evidence.

| DONALD'S STATEMENTS | CIVILIAN WITNESSES WHO REFUTE/DISPUTE DONALD'S STATEMENTS |
|---|---|
| Officer Donald testified that when he turned on his driver's spotlight illuminating Mr. Thompson and Mr. Bryson, and commanded them to "have a seat near the front of [his] car or near the push bars," the two men began "rapidly approaching" his patrol vehicle on the west side of the patrol vehicle. *Ex. "2", at pp. 184, 186.* | Mr. Andre Thompson and Mr. Bryson Chaplin deny they began walking northbound at a faster pace on the west side of the patrol vehicle. *Exs. "4" and Attached as Exhibit "18" is a true and correct copy of Declarations of Bryson Chaplin.* <br><br> When they saw the a vehicle pull over, turn on its spotlight, and heard a male voice commanding them to take a seat in front of |

DAVIES PEARSON, P.C.
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| | the vehicle, they started crossing Cooper Point Road to avoid contact. *Ex. "4", at p. 2.* |
| Officer Donald testified when he identified himself as a police officer, the subject wearing a dark colored shirt and baseball hat, raised the skateboard he was carrying over his head with both hands and began running towards the patrol vehicle. *Ex. "2", at p. 191.* | Mr. Thompson and Mr. Chaplin deny that when Officer Donald identified himself and commanded them to stop, Mr. Chaplin raised his skateboard with both hands above his head and ran towards Officer Donald. *Exs. "4" & "18".* <br><br> When they heard a male voice yell Olympia Police, they continued running northbound on Cooper Point Road to avoid contact. *Ex. "4", at p. 2.* |
| Office Donald testified that as Mr. Thompson and Mr. Chaplin rapidly approached the west side of his patrol car, I walked to the rear of his vehicle to , where | Mr. Thompson and Mr. Chaplin deny they rapidly approached the west side of Officer Donald's patrol vehicle. *Exs. "4" & "18"* |

**DECLARATION OF SUNNI KO**
Page 11

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| the subjects where rapidly approaching along the passenger side. *Ex. "2", at pp. 204 – 05.* | Mr. Thompson and Mr. Chaplin were running north on Cooper Point Road. *Id.* |
| Officer Donald testified that when the subjects were near the right rear passenger's side quarter panel near the bumper area, the subject in the light-colored shirt (Mr. Thompson) turned toward him and "grabbed a hold of [his] right arm." *Ex. "2", at pp. 206, 210.* | Mr. Thompson denies walking towards and eventually being at the right rear passenger's side quarter panel of the patrol vehicle; he denies turning towards Officer Donald; he denies grabbing Officer Donald's right arm. *Ex. "4".* |
| Officer Donald testified that as he struggled with Mr. Thompson and attempted to maintain his balance, he observed Mr. Chaplin walk around the subject he was struggling with. *Ex. "2", at p. 216* | Mr. Chaplin denies walking around Officer Donald and he/Officer Donald and Mr. Thompson struggled. *Ex. "18".* |
| | |

**DECLARATION OF SUNNI KO**
Page 12
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| Officer Donald testified that Mr. Thompson "spun" him around. *Ex. "2", pp. 223* | Mr. Thompson denies ever laying his hands upon Officer Donald.  He specifically denies "spinning" Officer Donald around, turning towards Officer Donald, reaching out and grabbing his right shirt sleeve.  Mr. Thompson was on the opposite side of the street running away from Officer Donald. *Ex. "4"* |
| Officer Donald testified that after he was "spun" around by Mr. Thompson and was unable to defend himself, Mr. Thompson forced his body into a "hunched over or bent-over position," thus forcing him "toward the ground*." Ex. "2", pp. 225 – 26.* | Mr. Thompson denies ever physically making contact with Officer Donald.  He denies grabbing him, spinning him around, pushing him down toward the ground, or pinning his right arm into the center of Officer Donald's body. *Ex. "4".* |
| Officer Donald testified that while he struggled with Mr. Thompson, Mr. Chaplin | Mr. Chaplin denies he ever came in close proximity to Officer Donald.  He denies |

**DECLARATION OF SUNNI KO**
Page 13
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| who was standing behind him raised his skateboard above his head, causing him to fear for his life. *Ex. "2", pp. 229 – 30.* | standing behind Officer Donald with his skateboard raised above his head.  He denies Officer Donald was hunched over while Mr. Thompson held him down.<br><br>Mr. Chaplin was running away from Officer Donald. *Ex. "18".* |
| Officer Donald testified he removed his firearm from its holster with his left hand, had his left arm "underneath his right forearm" or "underneath his armpit," he saw Mr. Chaplin's skateboard "lined-up with [his] head. *Ex. "2", at pp. 452-54.* | Mr. Chaplin denies lifting his skateboard above his head to strike Officer Donald. *Ex. "18".* |
| Officer Donald testified he fired unknown number of rounds at Mr. Chaplin who was standing approximately two feet behind him with his skateboard raised above his | Mr. Chaplin deny he was fired upon when he was standing approximately two feet behind Officer Donald. *Ex. "18".* |

**DECLARATION OF SUNNI KO**
Page 14
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| head. *Ex. "2", at pp. 234 – 36.* | Mr. Thompson and Mr. Chaplin were running on the opposite side of the road when Officer Donald fired his gun multiple times. *Exs. "4" & "18".*<br><br>When they heard the multiple gunshots, they began running towards the wooded area to avoid being shot.  The hoped the woods would provide cover and protection from Officer Donald.  While running, Mr. Thompson struck a recycling bin sitting curbside, and dropped his skateboard. *Ex. "4"* |
| Officer Donald testified that when Mr. Chaplin was fired upon multiple times, Mr. Chaplin "swung it down" but that "it did not him [him]." *Ex. "2", at p. 235.* | Mr. Chaplin denies attempting to strike Officer Donald by swinging his skateboard down upon his head. *Ex. "18".* |

**DECLARATION OF SUNNI KO**
Page 15
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| Officer Donald testified that after he heard movement in the woods, he saw Mr. Chaplin "crouched down in the bushes directly in front of [him] where [he] was standing," attempting to hide from him. *Ex. "2", pp. 258, 260.* | Mr. Chaplin denies he was crouched in the bushes few feet from the fog line, attempting to hide from Officer Donald. *Ex. "19".* |
| Officer Donald testified he saw Mr. Chaplin "advancing toward [him] very slowly." "It almost appeared as if he didn't think I saw him." "[H]e was on his knees crouched down but using his knees to walk forward toward me." *Ex. "2", at p. 263.* | Mr. Chaplin denies he was on his knees and was using his knees to walk forward toward Officer Donald. *Ex. "18".*<br><br>After turning around and running back in the direction from which he came, Mr. Chaplin jumped out of the bushes and onto Cooper Point Road, not seeing or hearing Officer Donald. *Ex. "18", at p. 2.* |
| Officer Donald testified that as Mr. | Mr. Thompson denies he was hiding behind |

**DECLARATION OF SUNNI KO**
Page 16
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| Chaplin stood up abruptly from having crouched in the woods, he observed Mr. Thompson whom he believed had ran into the woods running toward him from the southwest direction (the hole in the fence) of where he/Officer Donald stood. *Ex. "2", at p. 277.* | the hole in the fence.  He denies running towards Officer Donald as Mr. Chaplin stood up to face Officer Donald. *Ex. "4".* |
| Officer Donald testified that Mr. Chaplin again raised his skateboard above his head. *Ex. "2", at p. 279.* | Mr. Chaplin denies he raised his skateboard above his head. *Ex. "18", at p. 2.* |
| Officer Donald testified he "advised" he would discharge his weapon if Mr. Chaplin did not comply. *Ex. "2", at p. 281.* | Mr. Chaplin and Mr. Thompson deny they heard Officer Donald "advise" or yell or shout he was going to discharge his firearm if Mr. Chaplin did not show his hands or lay down. *"4" & "18"*<br><br>Over 30 civilian witnesses who heard gunfire and heard shouting during the |

**DECLARATION OF SUNNI KO**
Page 17
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| | incident were interviewed by police. Not a single witness told police or testified he/she heard Officer Donald warn he was going to shoot before discharging his firearm. |
| Officer Donald testified that Mr. Chaplin continued to advance and run toward him with the skateboard raised over his head. *Ex. "2", at p. 286.* | Mr. Chaplin denies running toward Officer Donald with his skateboard raised above his head.<br><br>After running into the wood to get away from Officer Donald, when they heard the siren of another patrol vehicle and heard movement in the bushes, Mr. Thompson and Mr. Chaplin turned around and ran back in the direction from which they came. At the end of the guardrail next to the house, they ran out of the woods towards Coopers Point Road. *Exs. "4" & "18"*<br><br>Mr. Thompson exited the woods first, with |

**DECLARATION OF SUNNI KO**
Page 18

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| | Mr. Chaplin following close pursuit. Mr. Thompson had nothing in his hands which could have been used as a weapon. *Id.* |
| | When Mr. Thompson ran out onto Cooper Point Road, he did not see Officer Donald but heard Officer Donald yell, "Stop" "Get down". *Ex. "4"* |
| | As soon as Mr. Chaplin jumped out of the woods, Officer Donald fired his gun multiple times. Mr. Thompson watched as his brother immediately fell to the ground near the wood line. *Id.* |
| Officer Donald testified that after he fired multiple times at Mr. Chaplin and Mr. Chaplin fell to the ground, Mr. Thompson who was running towards Officer Donald stopped "went to Mr. Chaplin." *Ex. "2", at p. 293.* | Mr. Thompson denies he was running towards Officer Donald when his attention was diverted. He denies going to his brother after he was shot. *Ex. "4".* After he watched his brother fall to the |

**DECLARATION OF SUNNI KO**
Page 19
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| | ground, he stood in disbelief as Officer Donald started yelling at him to get on the ground and at his brother to "Stay down!" *Ex. "4"* |
| Officer Donald testified that Mr. Thompson started "taking very large steps" towards him after he knelt over his brother. *Ex. "2", at pp. 294, 300.* | Mr. Thompson denies he started walking towards Officer Donald. When he saw his brother shot down, he began taking steps towards his brother, but he stopped when he heard Officer Donald yelling at him to get down, to get on the ground. *Ex. "4", at p. 4.*<br><br>He wanted to go to his brother, but instead he yelled, "Bro!" "Bro!" "Bro!" He also yelled at Officer Donald for shooting his brother. *Ex. "18".* |
| | |

**DECLARATION OF SUNNI KO**
Page 20

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| Officer Donald testified that when Mr. Thompson began taking long strides to reach him, he began walking backwards to place a distance between them while keeping his eyes on Mr. Thompson. *Ex. "2", at pp. 301.* | After shooting Mr. Chaplin, Officer Donald began moving closer to him yelling at him to get on the ground. *Ex. "4"* |
| Officer Donald testified that when Mr. Thompson was approximately five (5) feet away from him, Mr. Thompson took "his final big steps" before reaching out with his right arm toward his firearm. *Ex. "2", at p. 304.* | Mr. Thompson denies taking his final steps to reach Officer Donald. He denies reaching out with his arm to grab Officer Donald's gun. *Ex. "4".*<br><br>Mr. Thompson was not on a suicide mission. He saw Officer Donald shoot his brother. He had no doubt Officer Donald would/could shoot him too. He stood still has Officer Donald began slowly moving towards him. *Ex. "4"* |

**DECLARATION OF SUNNI KO**
Page 21

DAVIES PEARSON, P.C.
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| Officer Donald testified he warned Mr. Thompson he was going to shoot if Mr. Thompson did not follow his commands to stop and get on the ground. *Ex. "2", at p. 702.* | Mr. Thompson denies he heard Officer Donald warn he was going to shoot before he fired his gun multiple times, shooting him once in the abdomen. *Ex. "4"*<br><br>Officer Paul Evers stated during his defense interview that before the second volley of shots, he clearly heard Officer Donald giving commands to "Stop" and "Get on the ground."  He never reported hearing Officer Donald warning he was going to shoot before discharging his weapon multiple times. *Attached as Exhibit "19" is a true and correct copy of Transcript of Officer Ever's Defense Interview, p. 26.* |
| Officer Donald testified it was "highly likely" he sustained bruises or "marks" on his left arm from Andre Thompson grabbing his left arm during the altercation | Officer Donald never mentioned during his recorded interview with Detective Claridge nor in his typed written statement that Mr. Thompson left "marks" on his left or right |

**DECLARATION OF SUNNI KO**
Page 22
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| and that these marks were not present before the incident in question. **Ex. "2", at p. 327-28.** | arm during the altercation. **Exs. "3" & "12".**<br><br>During his defense interview, when specifically asked if he had sustained an injury of any sort, Officer Donald responded, "I didn't have any bruises or abrasions as part of the contact." **Ex. "14" p. 77 (Transcript of Defense Interview Dated July 29, 2016).** |
| During cross examination, Officer Donald testified that the marks on his left arm "weren't there before the incident and they were there after the incident." **Ex. "2", at p. 502.** | Detective Claridge of the Thurston County Sheriff's Department testified that as Officer Donald was getting ready to be photographed, he asked Officer Donald if he sustained the mark on his left arm during the incident or prior to the incident. Officer Donald responded he had sustained the bruises **prior to the incident. Attached as Exhibit "20" is true and correct copy of the Transcript of Detective Claridge's** |

**DECLARATION OF SUNNI KO**
Page 23
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | *Testimony, p. 4-5.* |
|---|---|
| Officer Donald testified that as Mr. Chaplin came at him with his skateboard, he yelled, "I'll shoot! I'll shoot!" before discharging his firearm. *Ex. "2", at p. 701.*

Officer Donald also testified he warned Mr. Thompson he was going to discharge his firearm by yelling, "I'll shoot! I'll shoot!" before firing his weapon. *Ex. "2", at p. 702* | Officer Donald never warned he was going to shoot if he did not comply with his demands to get down prior to discharging his firearm multiple times, according to Mr. Thompson. *Ex. "4".*

Thirty (30) civilian witnesses were interviewed by police.  Numerous witnesses testified on behalf of the State.  Not a single witness told police or testified he/she heard Officer Donald warn he was going to discharge his firearm. |
| **OFFICER DONALD'S TESTIMONY** | **TESTIMONY OF STATE'S FORENSIC OFFICERS AND DEFENSE EXPERTS WHO REFUTE OFFICER DONALD'S TESTIMONY** |
| | |

**DECLARATION OF SUNNI KO**
Page 24
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| 1 Though Officer Donald refused to | The State's firearms' expert from the |
| 2 acknowledge while testifying that the | Washington State Patrol Crime Laboratory, |
| 3 muzzle of his gun would have been | Ms. Kathy Geil, stated during her interview |
| 4 pointing upward as he aimed for Mr. | that Officer Donald was "pointing down at |
| 5 Chaplin's torso while he was hunched over | the ground at that point would be my . . . in |
| 6 at a 45 degree angle with his gun | order to get the defects on the ground like |
| 7 underneath his right armpit, he told | that." *Attached as Exhibit "21" is a true* |
| 8 Detective Claridge during his interview | *and correct copy of the Transcript of* |
| 9 that he was "looking up" at Mr. Chaplin as | *Kathy Geil's Defense Interview.*   She later |
| 10 he discharged his weapon and was | testified that the "bullet has to be in that |
| 11 "looking where he was shooting." *Ex. "2",* | direction" when asked, "Can you say that |
| 12 *p. 512 and Ex. "3" p. 8, line 22.* | the bullet strikes are made with the gun |
| 13 | pointing down? *Attached as Exhibit "22"* |
| 14 | *is a true and correct copy of the Transcript* |
| 15 | *of Kathy Geil's Testimony, p. 131.* |
| 16 | |
| 17 | Defense crime scene reconstruction expert, |
| 18 | Mr. Kay Sweeney, testified that based on |
| 19 | the scraping of the bullet fragment at the |
| 20 | entry of the craters of the bullet strikes, that |
| 21 | the shots were "not directed at 90 degrees |

**DECLARATION OF SUNNI KO**
Page 25
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

DAVIES PEARSON, P.C.
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

1  to the pavement, that there was an angle to

2  it, and it's a somewhat shallow angle, but

3  it's not real shallow." *Attached as Exhibit*

4  *"23" is a true and correct copy of the*

5  *Transcript of Defense Expert Kay*

6  *Sweeney, pp. 67 – 68, including*

7  *Photographs Admitted During Trial.*

8

9  The State's crime scene reconstruction

10  expert from the Washington State Patrol

11  Crime Laboratory, Mr. Kristopher Kern,

12  testified that for Officer Donald to have

13  fired his weapon creating the three bullet

14  strike in the pavement as depicted in the

15  photographs, the muzzle of the gun could

16  have been at any angle, "from 90 straight

17  down all the way to oblique, seven degrees

18  or less, anywhere you can strike that

19  asphalt." He did not testify that the strikes

20  would have been caused by the muzzle of

21  the gun pointing upward, as Officer Donald

22

23  **DECLARATION OF SUNNI KO**

24  Page 26

25

26

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

|  | had to have done in order to aim for Mr. Chaplin's torso as he stood above him getting ready to strike with his skateboard. ***Attached as Exhibit "24" is a true and correct copy of the Transcript of State's Crime Scene Reconstruction Expert Kristopher Kern, pp. 147 – 48.*** |
|---|---|
| Officer Donald testified he was not standing still when the shots were fired, but were moving around significantly.  He testified, "We were both moving.  I was being pushed and pulled different directions, and he was moving as well." | Mr. Sweeney testified that the "the firing positon of at least the position of the firearm is pretty much in the same place during those three discharges." ***Ex. "23", at pp. 66 - 67.***<br><br>He also testified that direction of fire of the three bullet strikes to the pavement were all "northeast" across the roadway.  "Slight southwest-to-northeast angle." ***Id., at p. 51.***<br><br>Ms. Geil testified, "It could be that the shooter hasn't moved location, and so they |

**DECLARATION OF SUNNI KO**
Page 27
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

|    |    |
|----|----|
| 1  | (casings) are grouping because it's part of a |
| 2  | pattern." *Ex. "22", at p. 132.*  She further |
| 3  | added, "Typically, when you have a group |
| 4  | of something, it means that something is |
| 5  | being stationary or something is causing it |
| 6  | to collect in one area." *Ex. "22", at p. 133.* |
| 7  |    |

|    |    |    |
|----|----|----|
| 8  |    |    |
| 9  | Officer Donald testified that while Mr. | The State's crime scene reconstruction |
| 10 | Thompson held him down at a 45 degree | expert Mr. Kristopher Kern testified that if |
| 11 | angle, he/Officer Donald held his gun with | Officer Donald had tucked the gun under |
| 12 | his left hand underneath his right arm or | his arm and the muzzle of the gun was |
| 13 | right arm pit and fired multiple times at | pointing at a target, and the ejection port is |
| 14 | Mr. Chaplin who was standing | on the right side of the gun, the ejection |
| 15 | approximately 2 feet behind him getting | port could be obstructed by Officer |
| 16 | ready to strike with his skateboard. *Ex.* | Donald's body, his armpit, perhaps his |
| 17 | *"2", at pp. 225 – 26.* | shoulder.  And the obstruction could affect |
| 18 |    | where the casings could potentially land. |
| 19 |    | *Ex. "24", at p. 109.* |
| 20 |    |    |
| 21 |    | Mr. Kern was asked during cross, "[I]f the |

**DECLARATION OF SUNNI KO**
Page 28
ml c:\users\nnlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| 22 |
| 23 |
| 24 |
| 25 |
| 26 |

| | |
|---|---|
| | shooter was standing between the right rear corner and the center of the trunk facing north, northwest, bent at 45-degree angle, the shooter not shooting with the right arm but shooting with the left arm, the left arm underneath the armpit, the right armpit, shooting with the muzzle of the gun at a higher up pointing at a target that's higher than the height of the shooter" "you cannot say that the casings would have landed on the other side of the patrol vehicle, can you?  Mr. Kern responded, *"I think that's a stretch potentially." Ex. "24", at p. 149.* |
| | Mr. Sweeney testified, "The rendition that I'm aware of doesn't fit the evidence." *Ex. "23", at p. 221.* |
| Officer Donald testified the muzzle of his gun was facing "north" when he fired upon | Mr. Sweeney testified that based on the trajectory of the bullet strikes, the grassy |

**DECLARATION OF SUNNI KO**
Page 29
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

1   Mr. Chaplin near his patrol vehicle. *Ex.*
2   *"2", at pp. 234 – 35 & 690.*

5   Officer Donald also marked with arrows on
6   a diagram the direction his body was facing
7   and the direction shots were fired when he
8   allegedly observed Mr. Chaplin standing
9   two feet behind him with the skateboard
10  raised above his head. *Attached as Exhibit*
11  *"26" is a true and correct copy of the*
12  *Diagram Officer Donald Drew Depicting*
13  *the Direction His Body Was Facing and*
14  *the Direction of Fire; Ex. "2", at p. 537.*

depression adjacent to the fence line, the
location of the patrol vehicle, the location
of the three casings on the passenger side of
the patrol vehicle, and the ejection pattern
of Officer Donald's firearm, Officer Donald
was standing next to the fence north of the
patrol vehicle facing east while firing his
gun at a downward angle in a north east
direction. *Ex. "23", at p. 61 – 67.*

Sergeant Brady noted foot prints in the
grassy strip adjacent to the fence line to the
north of the rear of the patrol vehicle.
*Attached as Exhibit "25" is a true and*
*correct of Sgt. Brady's Report dated   June*
*3, 2015.* [This is the location where Mr.
Sweeney determined Officer Donald stood
as he discharged his firearm.]

Mr. Kern also testified that if Officer
Donald was standing in the grassy Mr. Kern

**DECLARATION OF SUNNI KO**
Page 30
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet
files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

also testified that if Officer Donald was standing in the grassy depression next to the fence and is "shooting in the northeast direction . . . but standing southwest," the shooter could have created the three bullet strikes found in the pavement with the casings landing on the passenger side of the patrol vehicle in the grassy strip next to the fence. *Ex. "24", at p. 105.*

Ms. Geil testified that if Officer Donald was behind the rear of the patrol vehicle, facing northwest, firing northeast creating three bullet strikes on the road, with the ejection port to the right of the firearm, the casings would have landed "to the center of the road." *Ex. "22", at p. 128 – 29.*

17 Officer Donald's diagram of where his
18 body was facing and the direction of fire
19 clearly show that he was NEVER facing
20 east with his gun firing west in order for
21 the casings to have landed on the passenger

Ms. Geil further testified that if the casings were ejected to the right striking the patrol vehicle (Officer Donald facing east with the muzzle of the gun firing west), the casings

22

23 **DECLARATION OF SUNNI KO**
24 Page 31
25 ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052
26

| | |
|---|---|
| side of the patrol vehicle. *Id.* | could bounce off the vehicle or would have "clear the vehicle to be to the right" (on the passenger side of the patrol vehicle on the grassy strip next to the fence). *Id. at p. 129* |
| Officer Donald testified when he fired his gun multiple times at Mr. Chaplin, Mr. Chaplin was approximately two feet behind him as he aimed for center mass – his torso.  He had no explanation as to how/why he missed all four shots.   *Ex. "2", at pp. 232, 455.* | Mr. Kern testified, "assuming you're a good shot and you're within close proximity to the person" being fired upon, "I don't think you would be missing."  *Ex. "24", at p. 117.* |
| During the second volley of shots fired, Officer Donald testified he was standing about four to 5 feet away from Mr. Chaplin when he fired his weapon multiple times. *Ex. "2", at p. 559.* | Mr. Sweeney testified that from the center line where Officer Donald claimed he stood to where Mr. Chaplin's feet were found resting, the total distance was approximately 22 feet. *Ex. "23", at p. 75.* And Mr. Kern testified that Mr. Chaplin |

**DECLARATION OF SUNNI KO**
Page 32
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| 1 | He also testified that after Mr. Chaplin was shot multiple times, he stumbled back couple feet and began "rolling around quite a bit." "He was on the ground just rolling around." *Ex. "2", at p. 561 & 62.* |

He also testified that after Mr. Chaplin was shot multiple times, he stumbled back couple feet and began "rolling around quite a bit." "He was on the ground just rolling around." *Ex. "2", at p. 561 & 62.*

would have had to travel 20 feet for his feet to have landed at the edge of the fog line, assuming this is where he fell, the shooter was standing on the centerline, and Mr. Chaplin was approximately five feet from the shooter. *Ex. "24", at pp. 121 – 122.*

Dr. Lacy testified the gunshot wound that shattered Mr. Chaplin's spinal column was "more probably than not, it was closer to immediately" incapacitating. *Attached as Exhibit "27" is a true and correct copy of the Transcript of Dr. Lacy's Tesimony p. 32.*

"So there is a bullet wound around the spine causing immediate dysfunction – immediate loss of the use of the legs." *Ex. "27", at p. 33.*

Dr. Lacy testified, "it's very unlikely that

**DECLARATION OF SUNNI KO**
Page 33
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

1  you're going to have much movement after

2  this, and I think it's probably more likely

3  than not that he would have collapsed right

4  away." *Ex. "27", at p. 74.*

5

6  Mr. Sweeney testified that based on the

7  lack of impact abrasion on the elbows of

8  Mr. Chaplin's sweatshirt, lack of "grading

9  on the asphalt on the fabric of the sleeves,"

10  lack of abrasions to his face, lack of injury

11  to the back of Mr. Chaplin's head from

12  hitting the pavement, there was no evidence

13  of Mr. Chaplin stumbling and tumbling as

14  Officer Donald described.  Mr. Sweeney

15  determined Mr. Chaplin fell "pretty much

16  straight down." *Ex. "23", at pp. 187 – 88.*

17  And that there "no particular significant

18  movement at the time of the collapse." *Ex.*

19  *"23", at p. 188.*

20

21

22

23  **DECLARATION OF SUNNI KO**

24  Page 34

25  ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

26

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | |
|---|---|
| 1 | Officer Donald testified that during the | State's firearms expert, Ms. Kathy Geil's |
| 2 | third volley of shots, Mr. Thompson was so | report provides that when she tested Officer |
| 3 | close he could see Mr. Thompson's eyes. | Donald's firearm, the drop-off distance was |
| 4 | "It was very close." He was close enough | approximately 48 inches.  Attached as |
| 5 | to reach for Officer Donald's gun.  He was | *Exhibit "28" is a true and correct copy of* |
| 6 | so close Officer Donald could not even | *Ms. Kathy Geil's Forensic Report, p. 1*. |
| 7 | extend his arm out "in a traditional, fully- | Meaning, if Mr. Thompson was less than |
| 8 | supported shooting position" for fear Mr. | 48 inches away from the muzzle of Officer |
| 9 | Thompson would grab his gun. *Ex. "2", at* | Donald's gun, there would have been |
| 10 | *p. 225.* | gunshot residue on Mr. Thompson's white |
| 11 | | T-shirt. |
| 12 | Mr. Thompson was close enough to reach | |
| 13 | for his firearm when he fired multiple | Though the detectives never had Mr. |
| 14 | times at Mr. Thompson. *Id., at p. 565-66.* | Thompson's white T-shirt tested for |
| 15 | | gunshot residue, defense expert, Mr. |
| 16 | | Sweeney, did test for gunshot residue and |
| 17 | | found no evidence of residue.  *Attached as* |
| 18 | | *Exhibit "29" is a true and correct copy of* |
| 19 | | *Mr. Kay Sweeney's Report dated* |
| 20 | | *November 2, 2016, p. 6.*  Hence, Mr. |
| 21 | | Sweeney testified that when Mr. Thompson |

**DECLARATION OF SUNNI KO**
Page 35

ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

DAVIES PEARSON, P.C.
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

| | was shot in the abdomen, the distance between Mr. Thompson and the muzzle of Officer Donald's firearm was more than 48 inches/ 4 feet apart. *Ex. "23", at p. 196.* |
|---|---|
| Officer Donald testified that though Mr. Thompson was close enough to grab his gun, somehow when he fired multiple times, only one bullet struck his abdomen. *Ex. "2", at p. 225.* | When asked whether a shooter targeting the torso area within close proximity to the target would have difficulty missing his target, Mr. Kern testified, "Not in that close range. I wouldn't expect it to." *Ex. "24", at p. 117.* He further added that if the target is further away from the shooter, even a slight variation in the angle of the muzzle could affect whether the target is struck by a bullet. *Ex. "24", at p. 118.* |

27.     Coincidently, and unbeknownst to Mr. Thompson at the time, his sister Jasmine Thompson and her ex-boyfriend were driving towards home on Cooper Point Road right then after leaving Capital Medical Center when they heard what they believed were three

**DECLARATION OF SUNNI KO**
Page 36
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

1  gunshots. *Attached as Exhibit "30" is as true and correct copy of Declaration of*

2  *Jasmine Thompson.* Ms. Thompson, who had been reclining in her passenger seat with

3  her eyes closed, immediately sat up to see from whom the shots were fired.  When she

4  looked around, she saw a police officer [Officer Donald] standing in the northbound lane

5  on Cooper Point Road with his firearm drawn and his flashlight on.  At first, she believed

6  Officer Donald was attempting to stop their vehicle, and they immediately pulled over.

7  However, Officer Donald walked past their vehicle, moving southbound, so they pulled

8  back onto the road heading north. *Ex. "30", at p. 2.*  When Ms. Thompson looked to see

9  what Officer Donald was focused upon, she noticed a male figure in a white T-shirt

10 standing further down Cooper Point Road near the centerline.  She did not know at the

11 time this man in the white T-shirt was her brother Andre.

12 28.      As her vehicle drove further north, Jasmine Thompson's eyes remained transfixed

13 on the two figures as she watched Officer Donald moving slowly towards the man in the

14 white T-shirt.  She watched in disbelief as she saw the man fall to the ground after Officer

15 Donald fired multiple shots in his direction. *Ex. "31" p. 3.*   What haunts her still is the

16 memory of seeing the man clearly weaponless as Officer Donald's flashlight illuminated

17 his hands. *Id.*

18 29.      Though Ms. Thompson did not testify during trial, she was interviewed by police

19 during the early morning hours of May 21, 2015 at St. Peter Hospital. *Attached as*

20 *Exhibit "32" is true and correct copy of the Transcript of Jasmine Thompson's*

21 *Interview with Officer Zimmer dated May 21, 2015.*

22

23 **DECLARATION OF SUNNI KO**

24 Page 37

25

26

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

30.     Moreover, Plaintiff's expert, Mr. Gregory Gilbertson, unequivocally states in his declaration that Officer Donald's behavior was incompetent across the board in this matter:

> The shooting and wounding of Bryson Chaplin and Andre Thompson by Olympia Police Officer Ryan Donald on May 21, 2015 was *avoidable, unnecessary, unreasonable, and a clear and convincing example of a police officer employing excessive force* when a number of intermediate force and less-lethal force and control measures were immediately and readily available.

*Attached as Exhibit "31" is a true and correct copy of Mr. Gregory Gilbertson's Declaration.*

30.     Further, Gregory Gilbertson, outlines the City's own negligent acts and omissions:

> The shooting and wounding of Bryson Chaplin and Andre Thompson by Olympia Police Officer Ryan Donald on May 21, 2015 was, in large measure the end result of Olympia Police Department supervisory, command, and executive officers summarily *failing to adequately and effectively train, supervise, discipline, and retain* Officer Ryan Donald after Sergeant Allen documented to Lieutenant Raymond Holmes (Ret.) in a Memorandum dated 04/13/13 *several serious infractions and ongoing concerns* involving Officer Donald's *use of force* in other incidents, which were  personally observed by Sergeant Allen and *a number of un-named (but discoverable) Olympia Police officers,* who voiced their observations and concerns regarding Officer Donald to Sergeant Allen on about April 13, 2013.

*Ex. "31".*

**DECLARATION OF SUNNI KO**
Page 38
ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052

31.     After six weeks of trial and days of deliberation, after numerous notices that the jury could not reach unanimous decisions on counts I and II, the jury ultimately found each brother guilty of one count of assault in the 3rd degree on Count II – a lesser included crime of assault in the 2nd degree.

I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

SIGNED AT_____, Washington this _____ day of December,  2018.

_____

**SUNNI KO**, WSB# 20425

**DECLARATION OF SUNNI KO**
Page 39

ml c:\users\mlucente\appdata\local\microsoft\windows\temporary internet files\content.outlook\bunrarg1\decl ko final exhibits revised.doc

**DAVIES PEARSON, P.C.**
ATTORNEYS AT LAW
920 FAWCETT -- P.O. BOX 1657
TACOMA, WASHINGTON 98401
TELEPHONE (253) 620-1500
TOLL-FREE (800) 439-1112
FAX (253) 572-3052