HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDRE THOMPSON, a single man; and BRYSON CHAPLIN, a single man,

Plaintiff,

v.

CITY OF OLYMPIA, a local government entity; and RYAN DONALD and "JANE DOE" DONALD, individually and the marital community comprised thereof,

Defendant.

CASE NO. 3:18-cv-05267-RBL

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DKT. #18

## INTRODUCTION

THIS MATTER is before the Court on Defendants City of Olympia and Ryan Donald's Motion for Summary Judgment. Dkt. #18. This case arose out of a police shooting that took place in Olympia. On the night of May 21, 2015, Plaintiffs Andre Thompson and Bryson Chaplin were walking home from Safeway after stealing some beer. Officer Donald identified them as suspects in the theft and pulled his squad car up near them on the dark, wooded road. From there, the accounts of Donald and Plaintiffs diverge. Donald claims (and testified at the Plaintiffs' criminal trial) that Thompson and Chaplin attacked him with a skateboard, then fled, then tried to

1 attack him again after Donald gave chase. Plaintiffs claim that they never attacked Donald, but instead fled into the woods, reversed course, and were then shot by Donald after emerging. Sadly, in both versions of the story, Thompson came away with an abdomen wound and Chaplin a shattered spine. Chaplin is now confined to a wheelchair.

After being convicted of assault in 2017, Thompson and Chaplin filed this civil action on April 4, 2018. The Complaint alleges violations of 42 U.S.C. § 1983, negligence, outrage, and false imprisonment against both Defendants. It also alleges negligent training, supervision, discipline, and retention against the City alone.

Defendants moved for summary judgment on all claims. Dkt. #18. However, after Plaintiffs responded with declarations disputing Donald's version of events, Defendants withdrew their Motion with respect to the 1983 claim against Donald.[1] Dkt. #20, 25. They also did not renew their arguments regarding the outrage claim. Plaintiffs withdrew their own false imprisonment claim. This leaves only the negligence claim against Donald and the City, the negligent training claim against the City, and the 1983 *Monell* claim against the City.

Defendants argue that the 1983 *Monell* claim fails because Plaintiffs have not presented evidence tying Donald's training to the shooting. As for negligent training, Defendants similarly contend that "[t]here is nothing in this record that would have told Olympia that Officer Donald would attempt to murder two strangers in cold blood." Dkt. #25, at 2. Finally, Defendants argue that the negligence claim also must be dismissed because Donald intentionally shot Thompson and Chaplin.

---

[1] Although Defendants represent that they withdraw their Motion with respect to "the First Cause of Action," Defendants then go on to argue that the 1983 *Monell* claim against the City should be dismissed. Consequently, it appears that Defendants only intended to withdraw their Motion with respect to the First Cause of Action against Donald.

**DISCUSSION**

**1.    Legal Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must *view all evidence in the light most favorable to the nonmoving party* and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## 2. 1983 *Monell* and Negligent Training, Supervision, Discipline, and Retention Claims

Defendants argue that Plaintiffs' 1983 *Monell* claim must be dismissed because Plaintiffs have failed to provide any evidence that would suggest deliberate indifference on the part of the City. With respect to negligent training, Defendants contend that nothing in the record shows that the City "needed to train its officers not to try and murder innocent men." Dkt. #25, at 2. In response, Plaintiffs point to evidence that Donald's superiors were aware of his "repeated failure to wait for backup and his tendency to go 'hands on' in dealing with suspects." Dkt. #20, at 22; Dkt. #22, Ex. 16. Plaintiffs also point to the testimony of their expert, Gregory Gilbertson, who testifies that the City's failure to address Donald's dangerous habits caused the shooting. Dkt. #22, Ex. 32.

To assert a claim against a municipality under § 1983, a plaintiff must show that the defendant's employees or agents acted pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). It is not enough that the municipality merely employed a tortfeasor. *See Monell*, 436 U.S. at 691.

A municipality may be liable for a "policy of inaction" where "such inaction amounts to a failure to protect constitutional rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The custom or policy of inaction must constitute deliberate indifference, i.e., it "must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 681 (citations and internal punctuation omitted). If inaction was in the form of

deficient training, the plaintiff must show that the training deficiency was "closely related to the ultimate injury." *Id*. (quoting *Canton*, 489 U.S. at 391). "In other words, a plaintiff must show that his or her constitutional "injury would have been avoided" had the governmental entity properly trained its employees." *Lee*, 250 F.3d at 681.

Thus, to impose liability under 1983, a plaintiff must show that: "(1) they were deprived of their constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which amount[ ] to deliberate indifference to their constitutional rights; and (3) that these policies are the moving force behind the constitutional violation[s]." *Lee*, 250 F.3d at 681–82 (internal quotations omitted). Showing deliberate indifference ordinarily requires demonstrating "a pattern of similar constitutional violations by untrained employees," but "'in a narrow range of circumstances' a particular 'showing of obviousness'" can suffice. *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). Such obviousness exists when "violation of a protected right" is a "'highly predictable consequence' of the decision not to train." *Id*. (quoting *Connick*, 563 U.S. at 60).

Here, Plaintiffs base their *Monell* claim against the City on a 2013 memorandum of an incident involving Donald. On April 9, 2013, Donald chose to confront four suspects outside a housing complex rather than wait for backup, then physically engaged one suspect who was challenging him. Dkt. #22, Ex. 16, at 2. In the memo, Sergeant Allen expressed concern that Donald "did not wait for backup and placed himself in a position where the use of force was inevitable," and then decided to go "hands on" with the suspect. *Id*. The memo goes on to state that this behavior was becoming a "recurring theme" for Donald and mentions several similar

incidents.[2] *Id.* However, the training records for Donald provided by Plaintiffs do not indicate that he was given any training or discipline to address these problems. *See* Dkt. #22, Ex. 17.

Given the disputed facts in this case, it is clear that Donald may have caused Plaintiffs to suffer a constitutional deprivation. However, it is a much closer question whether the City's failure to train or discipline Donald could constitute a policy amounting to deliberate indifference. Plaintiffs do not present evidence of a pattern of similar constitutional violations by Donald or any other officers, but the 2013 memo shows clear-eyed awareness by Donald's superior of his dangerous habits. The question is therefore whether the City's knowing failure to address Donald's habit of putting himself in perilous situations and then physically engaging suspects could amount to a training inadequacy so egregious that a constitutional violation is a "highly predictable consequence." *Kirkpatrick*, 843 F.3d at 794.

The Court will not decide this question as a matter of law at this stage. Given that Donald's own sergeant explicitly recognized the dangerousness of his methods, it is not a foregone conclusion that the City was merely negligent in training Donald. *See Saldana v. City of Lakewood*, No. C11-6066 RBL, 2013 WL 5775690, at *2 (W.D. Wash. Oct. 25, 2013) (holding that a jury could conclude that Lakewood was deliberately indifferent in light of its failure to act despite knowledge of a particular dog's history of aggression). Nonetheless, the Court notes that Plaintiffs likely have a high hill to climb if they only produce evidence of the City's failure to train Donald.[3]

---

[2] Although the memo apparently had two pages, Plaintiffs' exhibit only contains the first page so the rest of Sgt. Allen's critique is cut off. However, it is clear from the first page that Allen was about to recount the details of the other incidents that sparked his concern.

[3] In cases involving failure to train, the Ninth Circuit has held that a plaintiff generally must present evidence of a "program-wide inadequacy." *Alexander v. City & Cty. of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994) (abrogated on other grounds); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (relying on *Alexander*). However, while *Alexander* ultimately affirmed summary judgment dismissal of the plaintiff's claim, the court also suggested that it was possible in some cases to produce evidence that a city's failure to train an officer

In addition, it is not sufficiently clear for summary judgment purposes whether Donald's lack of training was a "moving force" behind the constitutional violation. *See Lee*, 250 F.3d at 681. The facts are currently in dispute, and Plaintiffs claim that their injuries were caused by Donald's decision to aggressively pursue and forcefully apprehend two petty thieves. This bears important similarities to the type of conduct identified in the 2013 memo. Consequently, the Court will not grant summary judgment on Plaintiffs' 1983 *Monell* claim.

Plaintiffs' separate claim for negligent training, supervision, discipline, and retention is based on the same facts and arguments as their *Monell* claim. Defendants appear to ignore the negligence claim against the City in their Motion and only address it with a few conclusory statements in their Reply. Consequently, because the Court has already declined to dismiss the *Monell* claim and negligence requires a lower standard of proof, Plaintiffs' negligent training, supervision, discipline, and retention claim survives summary judgment as well.

**3.      Negligence**

Defendants argue that Plaintiffs' negligence claim against Donald (and the accompanying vicarious liability-based claim against the City) must be dismissed because Donald shot Thompson and Chaplin intentionally, not accidentally. To support their position, Defendants cite cases addressing the distinction between intentional torts and negligence in other contexts. *See Tegman v. Accident & Med. Investigations, Inc.*, 150 Wash. 2d 102, 107 (2003); *Morgan v. Johnson*, 137 Wash. 2d 887, 895 (1999); *Welch v. Southland Corp.*, 134 Wash. 2d 629, 635 (1998). Plaintiffs do not offer specific arguments to support their negligence claim but refer generally to their 1983 arguments and the facts supporting them.

---

was a "deliberate" or "conscious" choice. *Id.* (quoting *Canton*, 489 U.S. at 389). Because neither party has raised this line of precedent, the Court will not address how deliberate indifference may be demonstrated where the plaintiff's evidence relates to only one officer.

The elements of a negligence cause of action in Washington are the same as elsewhere: duty, breach, proximate cause, and damages. *Jimenez v. City of Olympia*, No. C09-5363RJB, 2010 WL 3061799, at *15 (W.D. Wash. Aug. 2, 2010) (citing *Degel v. Majestic Mobile Manor, Inc.*, 129 Wash.2d 43, 48 (1996)). Under the public duty doctrine, a municipal employee may only be liable for negligence if they owed a duty to the plaintiff in particular, rather than just to the general public. *Id*. However, "[t]he [public duty] doctrine provides only that an individual has no cause of action against law enforcement officials for failure to act. Certainly if the officers do act, they have a duty to act with reasonable care." *Petersen on behalf of L.P. v. Lewis Cty.*, 694 F. App'x 474, 475 (9th Cir.) (amended and superseded on other grounds) (quoting *Coffel v. Clallam Cty.*, 47 Wash.App. 397 (1987)); *see also Orn v. City of Tacoma*, No. C13-5974 RBL, 2018 WL 1961067, at *1 (W.D. Wash. Apr. 27, 2018) ("The public duty doctrine does not apply to claims of negligence premised on a police officer's alleged misfeasance, as opposed to nonfeasance.").

Here, Plaintiffs' negligence claim against Donald is obviously premised on his affirmative actions. The public duty doctrine therefore does not apply. In addition, contrary to Defendants' argument, this Court has previously held that a negligence claim based on a police shooting is "based on the totality of the circumstances leading up to the shooting—the failures to follow policies and orders." *Orn*, 2018 WL 1961067, at *1; *see also Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 639, 305 P.3d 252, 263 (2013) (holding that "[l]aw enforcement personnel's tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability."). The record at this point does not rule out the possibility that Donald acted unreasonably during the run-up to the actual shooting. Furthermore, as Defendants recognize, the

facts related to the shooting are entirely disputed. Consequently, summary judgment is inappropriate on the basis that Donald did not accidentally shoot Plaintiffs.

**4.     Outrage**

Defendants' sole argument that Plaintiffs' outrage claim should be dismissed is based on the alleged reasonableness of Donald's shooting. However, because the facts related to Donald's shooting of Thompson and Chaplin are in dispute, Defendants' argument must fail and Plaintiffs' outrage claim cannot be dismissed at this time.

**CONCLUSION**

For the above reasons, Defendants' Motion for Summary Judgment [Dkt. #18] DENIED.

IT IS SO ORDERED.

Dated this 7th day of February, 2019.

Ronald B. Leighton
United States District Judge