HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANDRE THOMPSON, a single man; and BRYSON CHAPLIN, a single man,<br><br>Plaintiffs,<br>v.<br><br>CITY OF OLYMPIA, a municipal corporation and local government entity, and RYAN DONALD and "JANE DOE" DONALD, individually and the marital community comprised thereof,<br><br>Defendants. | CASE NO. 3:18-cv-05267-RBL<br><br>ORDER DENYING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT<br><br>DKT. # 41 |

## INTRODUCTION

THIS MATTER is before the Court on Defendants' second Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment and to Exclude Expert DeFoe. Dkt. # 41. This case arose out of Olympia Police Officer Ryan Donald's shooting of the two teenage Plaintiffs in the early morning on May 21, 2015. As the Court explained in the Order denying Defendants' first Motion for Summary Judgment [Dkt. # 30], the parties offer starkly different stories about what happened. After Officer Donald pulled his car over, Plaintiffs stated

in declarations that they fled into the woods and were shot by Officer Donald.[1] Dkt. ## 22-7, 22-21. Officer Donald has testified that he shot Plaintiffs only after they tried to assault him with a skateboard near his car and then again after he pursued Plaintiffs into the woods. Dkt. # 19-1. This factual dispute caused the Court to deny Defendants' first Motion for Summary Judgment. Dkt. # 30.

In their second Motion, Defendants do not claim to have discredited Plaintiffs' version of events. Instead, they argue that Plaintiffs' claims should be dismissed because the report by Plaintiffs' expert, Scott DeFoe, analyzes the facts as recounted by Officer Donald. By commissioning such a report, Defendants contend that Plaintiffs have tacitly abandoned Thompson and Chaplin's story that they did not attack Officer Donald. Alternatively, Defendants ask the Court to dismiss Plaintiffs' "claims based on Expert Defoe's testimony" and exclude DeFoe himself as an expert witness. Dkt. # 41 at 20. In addition, Defendants argue that Plaintiffs' negligence claim should be dismissed independently because they were shot while commissioning a felony.

For the following reasons, the Court DENIES Defendants' Motion.

## DISCUSSION

**1.     Legal Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must *view all evidence in the light most favorable to the nonmoving party* and draw all reasonable inferences in that party's favor. *Anderson Liberty*

---

[1] Defendants also indicate that Plaintiffs have been deposed but do not describe on their testimony. Dkt. # 41 at 6.

*Lobby, Inc.*, 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**2.     Dismissal of All Claims**

Defendants argue that, because DeFoe's expert report "assum[es] that the event unfolded as detailed [by] Officer Donald," Plaintiffs have contradicted their own version of events and made it impossible for a reasonable jury to find in their favor. Dkt. # 42-5 at 15; Dkt. # 41 at 14. Defendants also argue that the doctrine of judicial estoppel prevents Plaintiffs from taking incompatible factual positions for their own advantage. Finally, Defendants contend that

Plaintiffs' criminal convictions for assault are "fundamentally inconsistent" with the § 1983 relief they now seek. Dkt. # 41 at 16. None of these arguments are convincing.

a.      *Whether a Reasonable Jury Could Find for Plaintiffs*

On summary judgment, the non-moving party succeeds if there is "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). This of course requires that there be some credible evidence supporting the non-movant's version of events. In *Moore v. Chesapeake & O. Ry. Co.*, for example, the Supreme Court upheld a trial court's judgment notwithstanding the verdict after the jury found the defendant liable for negligence. 340 U.S. 573, 576 (1951). The Court emphasized that, although there may have been some minor reasons to doubt the key witness's version of events, the plaintiff had provided no evidence directly supporting her account. *Id*. at 576-77.

Defendants' effort to compare this case to *Moore* is totally off base. Unlike *Moore*, where the plaintiff had *no* evidence supporting her position, Plaintiffs both state in declarations that they never attacked Officer Donald. Dkt. ## 22-7, 22-21. The fact that Plaintiffs' expert has provided a report analyzing the facts as recounted by Officer Donald does not preclude the possibility of a jury believing Thompson and Chaplin's stories over Officer Donald's. DeFoe was not a witness to the incident on May 21, 2015 and states in his report that he "makes no credibility determinations." Dkt. # 48-2 at 1.

If Plaintiffs indicated an intent to embrace Officer Donald's version of events at trial, Defendants' attempt to obtain judgment as a matter of law would be justified. However, Plaintiffs state that they have no plans of abandoning Thompson and Chaplin's stories and will try to discredit Officer Donald's account at trial. Dkt. # 47 at 6, 11. Until that changes, Defendants cannot argue that no reasonable jury could find for Plaintiffs.

b.  *Judicial Estoppel*

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). The doctrine exists "to protect against a litigant playing fast and loose with the courts" and "is an equitable doctrine invoked by a court at its discretion." *Id*. at 601 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990)). *Rissetto* thus held that it was unacceptable "for [the] plaintiff to claim in 1990 that she was unable to perform her job in order to obtain workers' compensation benefits and to claim [later] that she was performing her job adequately in order to win damages in [the current] suit." *Id*.

This situation is very different. Plaintiffs have not disingenuously changed their own position on the facts. Instead, they have merely hired an expert who opines that Plaintiffs still win under Defendants' set of facts. Defendants point to no cases applying judicial estoppel under such circumstances. Indeed, given the unpredictability of juries, Plaintiffs' approach is not gamesmanship but sound legal strategy.

3.  *Inconsistency with Plaintiffs' Criminal Convictions*

When a plaintiff has been previously convicted of a crime arising from the same facts as their subsequent § 1983 action, the civil suit must be dismissed if it alleges unlawful behavior "fundamentally inconsistent" with the basis for conviction. *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996). For example, a plaintiff previously convicted of resisting arrest cannot bring a § 1983 action alleging an unreasonable seizure because prevailing on such a claim would negate the "lawful arrest" element of resisting arrest. *Heck v. Humphrey*, 512 U.S. 477, 487 n. 6 (1994). However, "if the district court determines that the plaintiff's action, even if successful, will not

demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id*. at 487.

Here, Chaplin and Thompson (as an accomplice) were each charged with two counts of assault in the second degree with a deadly weapon—more specifically, a skateboard. Dkt. # 48-5; RCW 9A.36.021(c). However, they were only convicted of one count of assault in the third degree, which required finding that Thompson and Chaplin assaulted Officer Donald while he was performing his official duties. Dkt. ## 48-7, 48-9, 48-10; RCW 9A.36.031(g). The jury was instructed that one definition of "assault" is "an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." Dkt. #48-8.

When considering a Fourth Amendment excessive force claim, courts apply an "objective reasonableness standard" that requires case-by-case analysis. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Courts should consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. "Other relevant factors may include the availability of less intrusive force, whether proper warnings were given, and whether it should have been apparent to the officer that the subject of the force used was mentally disturbed." *Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017) (quoting *Hughes v. Kisela*, 841 F.3d 1081, 1085 (9th Cir. 2016)).

Given this flexible balancing approach for excessive force cases, Plaintiffs could very well succeed in their § 1983 claim without invalidating their criminal convictions. Plaintiffs were not convicted of assault with a deadly weapon so it is entirely possible that a jury could find that

whatever threat Officer Donald may have perceived did not justify the use of deadly force. Plaintiffs' § 1983 claim is therefore not "fundamentally inconsistent" with their criminal convictions, making summary judgment improper. *See Smithart*, 79 F.3d at 952.

### 3. Dismissal of Claims based on DeFoe's Report

As an alternative to outright dismissal of Plaintiffs' case, Defendants ask the Court to dismiss "Plaintiffs' claims based on Expert DeFoe's Testimony." Dkt. # 41 at 20. According to Defendants, the facts assumed in Expert DeFoe's report entitle Defendants to summary judgment as a matter of law and Plaintiffs should therefore not be able to present this theory to a jury. Defendants also seek qualified immunity on this set of facts for Officer Donald.

This attempt to narrow the case by slicing and dicing the claims misconstrues the Court's role on summary judgment and the jury's role at trial. Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). But Defendants' argument takes for granted that the parties *do* dispute what happened on the morning of May 21. Indeed, given that Plaintiffs do not actually assert any specific claims that hinge only on DeFoe's report, it is unclear what Defendants want the Court to dismiss. Granting summary judgment on a hypothetical set of facts would be backwards: the jury must decide the facts before the law can be applied. To apply the law before the factual landscape is solidified would amount to an advisory opinion.

Defendants' request is impractical for another reason: it is entirely possible, and perhaps likely, that the jury will not wholly adopt any party's version of the facts. At trial, the fact finders will consider the perspectives of three witnesses as well as physical evidence and assess a multi-part series of events. They may believe Thompson for one part of the story and Officer Donald for another or come down somewhere in the middle. In light of this, what use would it be

for the Court to hold that one possible manifestation of the facts would favor Defendants? The proper course is to instruct the jurors on the relevant law and let them do their job. If they are so inclined, Defendants will be free to move for Judgment as a Matter of Law once all the evidence has been presented.

As for qualified immunity, this also cannot be decided on the hypothetical basis Defendants propose. Where qualified immunity depends on "disputed issues of material fact that need to be resolved by a jury," a district court should deny summary judgment. *Thomas v. Gomez*, 143 F.3d 1246, 1247, 1249 (9th Cir. 1998). As long as the factual dispute over Plaintiffs' conduct toward Officer Donald persists, the Court will not grant qualified immunity.

**4. Exclusion of DeFoe at Trial**

Scott DeFoe is a former law enforcement professional with 28 years of experience at the Los Angeles police department, where he investigated and was personally involved with numerous use of force incidents. Defendants contend that the Court should exclude DeFoe from trial because his report "miscites case law . . . [and] assume[s] a set of facts (Officer Donald's) that do not give rise to a question of constitutional violation, a duty to retreat where no such duty exists, and that Officer Donald can face § 1983 liability for pre-force tactical negligence." Dkt. # 41 at 23. If the Court is unwilling to exclude DeFoe, Defendants request "curative jury instructions, which accurately state the law that Expert DeFoe ignores or misrepresents." *Id*.

To be admissible under Rule 702, expert testimony must be "both relevant and reliable." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir.) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Expert testimony also must "(1) address an issue beyond the common knowledge of the average layman, (2) be presented by a witness having sufficient expertise, and (3) assert a reasonable opinion given the state of the pertinent art or scientific

knowledge." *Id*. (citing *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir.1997)). An expert witness is not barred from testifying about ultimate issues of fact to be decided by the jury. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). However, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Id*. (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir.2002)). "[I]nstructing the jury as to the applicable law 'is the distinct and exclusive province' of the court." *Id*. (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir.1993)).

Defendants' objections to DeFoe's report do not relate to his qualifications as an expert under Rule 702 and therefore do not provide a basis for excluding him from trial. While DeFoe's report does not directly draw legal conclusions about this case, DeFoe does state that his opinions are based in part on *Mulligan v. Nichols*, 835 F.3d 983 (9th Cir. 2016) and *Graham v. Connor*, 490 U.S. 386 (1989). While an expert's reference to the facts may be "couched in legal terms," experts must refrain from basing their opinions directly on case law. *See Hangarter*, 373 F.3d at 1017. Plaintiffs would be well advised to remember this going forward as the parties begin filing pre-trial motions. However, DeFoe's passing reference to two cases in his report is not a reason to exclude him from trial. Furthermore, both parties will have the opportunity to submit proposed jury instructions. If Defendants believe that DeFoe's testimony becomes legally misleading they will be able to object and cross examine DeFoe about any perceived problems. This sufficiently addresses Defendants' concerns.

**5.** **Dismissal of Plaintiffs' Negligence Claim**

Defendants argue that Plaintiffs' negligence claim should be dismissed "because during the event underlying their damages, Plaintiffs were engaged in the commission of a felony." Dkt.

# 41 at 23. Specifically, Defendants assert that Thompson and Chaplin's assault on Officer Donald forced Officer Donald to shoot them.

Defendants rely on RCW 4.24.420, which provides: "It is a complete defense to any action for damages for personal injury or wrongful death that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death. However, nothing in this section shall affect a right of action under 42 U.S.C. Sec. 1983." Proximate causation is not present when an independent, intervening act that could not reasonably have been foreseen by the defendant interrupts the causal chain. *Sluman v. State*, 418 P.3d 125, 150 (Wash. Ct. App. 2018) (holding that that RCW 4.24.420 did not bar the plaintiff's negligence claim because there were disputed facts about whether the plaintiff could have reasonably foreseen the officer's conduct that injured him).

Here, it does not necessarily follow from Plaintiffs third degree assault convictions that they should have reasonably foreseen that Officer Donald would shoot them. Although Defendants maintain that Plaintiffs repeatedly tried to kill Officer Donald with a skateboard, Plaintiffs were not convicted of assault with a deadly weapon. *See* Dkt. ## 48-9, 48-10. Instead, their convictions indicated only that they intended to make Officer Donald fear bodily injury at one point during the encounter on May 21.[2] It is entirely possible that the jury will determine a set of facts in which Officer's Donald's decision to shoot at Thompson and Chaplin was an unforeseeable intervening cause. Summary judgment is therefore denied.

---

[2] Plaintiffs state that the assault charge that Thompson and Chaplin were convicted on only related to their conduct toward Officer Donald in the woods, not the initial encounter by his patrol car. Dkt. # 47 at 14. However, while it is true that Plaintiffs were initially charged with two counts of assault, it is unclear to the Court from the charging documents what event each count is referring to. *See* Dkt # 48-5.

## CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment is DENIED. Dkt. # 41. Defendants' Motion to Strike, contained in their Reply brief, is also DENIED as moot. Dkt. # 49.

IT IS SO ORDERED.

Dated this 22nd day of July, 2019.

*[signature]*

Ronald B. Leighton
United States District Judge