1
2

The Honorable Ronald B. Leighton
Trial date:  September 23, 2019

3
4
5
6
7
8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10
11
12
13
14
15
16

ANDRE THOMPSON, a single man; and
BRYSON CHAPLIN, a single man,

                              Plaintiffs,

        v.

CITY OF OLYMPIA, a municipal
corporation and local government entity;
and RYAN DONALD and "JANE DOE"
DONALD, individually and the marital
community comprised thereof,

                              Defendants.

No. 3:18-cv-05267-RBL

DEFENDANTS' TRIAL BRIEF

17

## I.    INTRODUCTION AND PROCEDURAL HISTORY

18
19
20
21
22
23
24
25

        The above-captioned lawsuit arose out of a response by the Olympia Police department, specifically Officer Ryan Donald, to a 911 call of a theft of a case of beer at a local Safeway. Plaintiffs had stolen two cases of beer from the Safeway earlier that evening and were in the process of stealing their third when a Safeway employee confronted them, and they subsequently threw the beer and her and fled the store. Officer Donald responded to the call and a low-level Terry stop quickly evolved into a dangerous situation. Plaintiffs attacked Officer Donald at the back of his police car, and he was quickly faced with only one choice—to use his gun to defend himself from Plaintiffs' attacks.

26
27

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

1    The Plaintiffs are represented by Sunni Ko of the Law Office of Sunni Ko, and
2  Monte Bersante and Brian King of Davies Pearson.  The Defendants are represented by
3  Andy Cooley and Kim Waldbaum of Keating, Bucklin & McCormack, Inc., P.S.

4    Plaintiffs allege their civil rights were violated by Officer Donald when Officer
5  Donald shot them to prevent the Plaintiffs from killing him with their skateboard.  Plaintiffs
6  also allege constitutional claims of failure to train against the City.  Finally, the Plaintiffs
7  also allege state law negligence and outrage claims against Officer Donald. They have
8  abandoned their claim of false arrest.

9                    **II.      STATEMENT OF FACTS**

10    There are two versions of what happened that night. One version is endorsed or
11  assumed as true by: Officer Donald; Expert DeFoe; Sunni Ko, by the transitive theory (she
12  hired Expert DeFoe); Monte Bersante, by the transitive theory (he also hired Expert
13  DeFoe); Andrew Cooley (who believes Officer Donald); and Thurston County jurors (who
14  unanimously found Plaintiffs guilty of assaulting Officer Donald). The other version (the
15  "in cold blood" theory) is endorsed by Plaintiffs only.

16    In this Statement of Facts, Defendants will provide the Court with a brief recap of
17  what occurred that night, reiterate briefly the "in cold blood" theory, and finally address the
18  story upon which Expert DeFoe's opinion is based and the opinions he offers.

19  **A.      Officer Donald contacted Plaintiffs because they committed a crime.**

20    During the early morning of May 21, 2015, Plaintiffs stood near Safeway's front
21  entrance. Plaintiff Chaplin swung his skateboard around his body. *Declaration of Andrew*
22  *G. Cooley in Support of Defendants' Motion for Summary Judgment,* Ex. F (Dkt. 42).
23  Plaintiffs were drunk. *Cooley Decl.*, Exs. G & H. They had already consumed two cases of
24  beer.

25
26
27

DEFENDANTS' TRIAL BRIEF - 2
3:18-cv-05267-RBL
1002-00881/452148.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

1
2
3
4
5
6
7
8
9
10
11



12 They entered the Safeway.

13
14
15
16
17
18
19
20
21
22



23 Plaintiff Chaplin grabbed a case of beer and headed for the exit.

24
25
26
27

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423



A Safeway employee approached Plaintiff Chaplin, and he threw the beer at her.



*Cooley Decl.*, Ex. F.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1    Plaintiff Chaplin was convicted of assaulting the employee. *Cooley Decl.*, Ex. B.

2    **B.      Officer Donald shot Plaintiffs because he was afraid they would kill him.**

3    At around 12:51 AM, Officer Donald got a call about Plaintiffs' theft and assault.

4    *Cooley Decl.*, Ex. I (Dkt. #42). (Testimony of Officer Ryan Donald Trial Transcript ("Tr."),

5    Tr. 137-140. He spotted Plaintiffs. Tr. 175-177. He stopped his patrol car to make contact

6    Plaintiffs. Tr. 180. He exited his car and told Plaintiffs to have a seat. Tr. 185-186. He

7    wanted to talk to the two suspects and determine if they were involved in the Safeway

8    crimes. Tr. 189. They did not stop, they did not have a seat, and they kept coming at his

9    patrol car. Tr. 190. He announced that he was "Olympia police" and ordered them to stop.

10   Tr. 190. Plaintiff Chaplin raised his skateboard above his head and came at the patrol car.

11   Tr. 191. Officer Donald believed that Chaplin was going to hit his car with the skateboard,

12   and he drew his gun to a low ready position. Tr. 191-192. Chaplin did not hit the car, and

13   Officer Donald re-holstered his gun. Tr. 193. Officer Donald moved to the rear of his patrol

14   car. Tr. 193.

15   As he got to the rear of the car, Plaintiffs came around the passenger side.

16   Tr. 196-233. Plaintiff Thompson grabbed Officer Donald's right arm and began trying to

17   pull him to the ground. *Id.* As Officer Donald struggled with this assailant, Plaintiff Chaplin

18   pivoted around Officer Donald and raised his skateboard up above his head ready to use it

19   to kill Officer Donald. *Id.* Officer Donald is a left-handed shooter and pulled his gun out.

20   *Id.* He pointed toward Chaplin and shot several times. *Id.* Plaintiffs stopped the assault and

21   ran north from the scene. Tr. 235-236. They fled into an adjacent wooded area. Tr. 249.

22   Officer Donald notified dispatch that shots were fired and he believed one was hit.

23   Tr. 236. Another officer called for a K-9 to the scene. Tr. 246-248. Over the radio an officer

24   asked Officer Donald whether the subjects were armed. Tr. 249-251. Officer Donald said

25   they were not armed but that one tried to assault him with a skateboard. Tr. 250.

26   As Officer Donald got to the wooded area, he saw Chaplin. Tr. 257-259. Chaplin

27   was 3-4 feet away and crouching in the woods with his skateboard in his hand. Tr. 261.

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

Chaplin had just tried to kill him with the skateboard at the car. Tr. 258-260. Officer Donald drew his gun and began giving him commands. Tr. 258-260. Chaplin started to get up from the crouched position and come at Officer Donald. Tr. 276-277. At the same time, Officer Donald saw Thompson coming from his left. *Id*. Chaplin raised the skateboard above his head and moved forward toward Officer Donald at the same time that Thompson was running in his direction. Tr. 280. Officer Donald ordered Chaplin to drop the skateboard. Tr. 286. He warned Chaplin that he would shoot him again. Tr. 286. Chaplin did not comply, and Officer Donald shot him again. Tr. 288. Chaplin dropped the skateboard and stumbled backwards. Tr. 289. Thompson diverted his attention to Chaplin who was now lying on the ground. Tr. 290. Thompson was screaming and yelling at Officer Donald. Tr. 293. Thompson started at Officer Donald. Tr. 294. Officer Donald ordered him to stop and get on the ground. Tr. 299-301. Officer Donald believed that Thompson was going to take his gun and kill him. Tr. 304. He shot Thompson. Tr. 304.

**C.      Plaintiffs have stuck to their "in cold blood" theory.**

Plaintiffs told a very different story than Officer Donald. *See, e.g.,* Dkt. No. 21 (Exs. 4 & 18). Plaintiffs themselves remain resolute in their pursuit of their "in cold blood" theory, only their lawyers, by telling their expert to assume Officer Donald is telling the truth, have distanced themselves from that story.

**D.      Expert DeFoe's factual account is completely at odds with Plaintiffs' testimony.**

Plaintiffs hired a police practices expert, Scott A. DeFoe, to offer opinions regarding the shooting. *Cooley Decl.*, Ex. E ("*DeFoe Report*") (Dkt. 42). Expert DeFoe's report contains a summary of documents he reviewed, including the Declarations of Andre Thompson and Bryson Chaplin. *DeFoe Report*, p. 3-4 (bullet points 28 & 29). Expert DeFoe then provides verbatim excerpts from Officer Donald's statement. *Id.* at 9-13. This is the sole factual account set forth in his report. Expert DeFoe admits he was told by

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1
2
Plaintiffs' attorneys to assume Officer Donald's account was true. *Cooley Decl.*, Ex. J (*DeFoe Dep.*, 27:15-17).

3
4
5
The following is a summary of Expert DeFoe's opinions. Defendants respectfully urges the Court to keep in mind the prohibition against pre-force negligence claims in the § 1983 context. *See Mendez*, 137 S. Ct. 1539.

6
7
8
Opinion 1: Officer Donald should not have stopped his vehicle to contact Plaintiffs without waiting for backup. *DeFoe Report*, 14.

9
10
11
Opinion 2: Officer Donald failed to formulate a tactical plan that outlined a "Less than Lethal Force option…" Officer Donald did not activate his emergency lights. *Id.* at 15-17.

12
13
14
Opinion 3: Officer Donald should have developed a safe and effective tactical plan if he was concerned Plaintiffs were bigger than him. Officer Donald showed "Tombstone Courage," which should be avoided. *Id.* at 17-22.

15
16
17
18
19
Opinion 4: Officer Donald should not have removed his firearm when it looked like Plaintiff Chaplin was going to hit his police car; he should have removed a "less lethal" option like his Taser. Officer Donald should have called for backup as soon as he saw Plaintiff Chaplin approach with the skateboard above his head. *Id.* at 22-24.

20
21
22
Opinion 5: Officer Donald should not have left a position of cover at his police vehicle to meet up with them at the rear of his police car. *Id.* at 24-25.

23
24
25
Opinion 6: Officer Donald should have immediately employed defensive tactics when Plaintiffs displayed signs of physical aggression in order to engage in a "tactical retreat…" *Id.* at 26-29.

26
27
Opinion 7: Officer Donald should not have used lethal force when he fired his gun four times to protect himself. He cites *Mulligan v. Nichols*, 835 F.3d 983 (9th Cir.2016). *Id.*

DEFENDANTS' TRIAL BRIEF - 7
3:18-cv-05267-RBL
1002-00881/452148.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

at 29-30.[1]

Opinion 8: Officer Donald should not have left a position of cover to pursue Plaintiffs after the first volley of shots, and he should have picked up his bean bag shotgun in case Plaintiffs came back. *Id.* at 29-33.

Opinion 9: Officer Donald prematurely removed his gun from his holster when Plaintiff Chaplin failed to comply with his commands to get on the ground. Officer Donald should have used OC spray or a Taser. *Id.* at 33-35.

Opinion 10: Officer Donald should not have shot Plaintiff Chaplin when Plaintiff Chaplin advanced on him. Officer Donald should have used a less lethal option *Id.* at 35-38.

Opinion 11: Officer Donald should not have shot Plaintiff Thompson when Plaintiff Thompson advanced toward him. Officer Donald should have used less lethal. *Id.* at 37-40.

**E.    Officer Donald had no Duty to Retreat or Disengage.**

Under the testimony of Officer Donald, his use of force was reasonable, constitutional and did not violate the Civil Rights Act. He is entitled to dismissal on the merits and qualified immunity. And there is no "respondeat superior" liability for the City of Olympia.

This does not change with the shrill criticism of the expert. There is no duty to retreat from performing law enforcement. There is no duty to disengage, wait for backup, or hide in a patrol car. This "provocation" argument has been soundly rejected by the Supreme Court, for good reason. Similarly, there is no duty to treat drunk lawbreakers different than sober ones. That is the law.

---

[1] The *Mulligan* cite regards negligence claims under California law which "encompass a broader spectrum of conduct than excessive force claims under the Fourth Amendment." *Mulligan v. Nichols*, 835 F.3d 983, 991 (9th Cir.2016).

DEFENDANTS' TRIAL BRIEF - 8
3:18-cv-05267-RBL
1002-00881/452148.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

# III.     LEGAL ANALYSIS

A.     **Plaintiff's Fourth Amendment Claims.**

1.     The Plaintiffs Excessive Force Claims.

Plaintiff claims that Officer Donald violated their Fourth Amendment rights when he necessarily shot them to prevent serious injury to himself.  The following is the bulk of the Supreme Court's analysis on the Fourth Amendment as applied to excessive force claims:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "`the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake.  Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises.  With respect to a claim of excessive force, the same standard of reasonableness at the moment applies:  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

> As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  (In analyzing the reasonableness of a particular search or seizure, 'it is imperative that the facts be judged against an objective standard').  An officer's evil intentions will not make a Fourth Amendment

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (emphasis added) (citations omitted).

Thus, the jury should be instructed as follows pursuant to Ninth Circuit Model Civil Jury Instruction 9.25 (Defendants' Proposed Instruction No. 19):

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest and in defending himself and others. Therefore, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officer used excessive force when he was attacked by Plaintiffs threatening to bash his skull in with a skateboard.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

(1) the nature of the crime or other circumstances known to the officer at the time force was applied;

(2) whether the Plaintiffs posed an immediate threat to the safety of the officer or to others;

(3) whether the plaintiffs were actively resisting arrest;

(4) the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the type and amount of force used;

(6) the availability of alternative methods to subdue the plaintiffs;

(7) the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

(8) whether it was practical for the officer to give warning of the imminent

DEFENDANTS' TRIAL BRIEF - 10
3:18-cv-05267-RBL
1002-00881/452148.docx

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

use of force, and whether such warning was given; and

(9) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

"The appropriate inquiry is whether the Defendant officers acted reasonably, not whether they had less intrusive alternatives available." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *see, e.g., Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S. Ct. 2605, 2610, 77 L. Ed. 2d 65 (1983); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-557 n.12, 96 S. Ct. 3082 n.12, 49 L. Ed. 2d 1116 (1976).  "Officers need not avail themselves of the least intrusive means of responding to a situation; they need only act within that range of conduct identified as reasonable." *Id.*

In light of this, the jury should also be instructed as follows:

Under the Fourth Amendment, a police officer has no duty to use the least amount of force, so long as the force used was reasonable.

*Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the least intrusive alternative (an inherently subjective determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment.")

Defendants' Proposed Instruction No. 28.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX:  (206) 223-9423

*2.    Any Alleged Violation of Police Department Policies or Regulations is Irrelevant to Question of Whether Officer Donald Violated Plaintiffs' Constitutional Rights.*

The jury should be instructed that "violation of a police department's policies or regulations is irrelevant to the question of an officer's liability under the Fourth Amendment." *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001); *see also, Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1989) ("While the unfortunate incident that gave rise to this lawsuit would not have occurred had [the Defendant police officer] followed the department's guidelines, police department guidelines do not create a constitutional right."). Plaintiffs may attempt to argue that a violation of an Olympia Police Department policy is evidence that Officer Donald violated Plaintiffs' constitutional rights. Under *Case*, this evidence is not relevant to those claims. To the extent Plaintiffs' expert DeFoe raises this issue (or any testimony on cross-examination raises it), it will be necessary to instruct the jury on this point, so as to distinguish a violation of policy from a state law negligence claim, since under state law, violation of a policy may be evidence of negligence. The Defendants propose that Model Instruction 1.11 be used at which time this evidence arises.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

The testimony you are about to hear may be considered only for the limited purpose of determining Officer Donald's negligence and for no other purpose.[2]

Defendants' Proposed Instruction No. 2.

*3.    The Jury Will Need to Be Instructed that Any Argument by Plaintiffs' Expert that Officer Donald Somehow Provoked a Confrontation with the Plaintiffs is Irrelevant as to Whether their Fourth Amendment Rights were Violated.*

Plaintiffs expert makes a number of allegations and offers a number of opinions as

---

[2] This instruction can be modified to fit each situation in which a limiting instruction is necessary. This will also need to be utilized to differentiate Plaintiffs' state law negligence claims from the Fourth Amendment excessive force claims which do not let the jury look backward from the incident; the jury only determines whether the force was reasonable at the moment it was used.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

to what in his expert report regarding Officer Donald's conduct before he shot the Plaintiffs, and DeFoe will expectedly testify to many of these same opinions in open Court to the extent his testimony is not limited.  However, a police officer does not have a duty to disengage, wait for backup, or hide in a patrol car, and they should be instructed as to this issue.

Expert DeFoe's opinions would require the jury to evaluate whether Officer Donald's allegedly poor tactics led to his need to shoot Plaintiffs. Cooley Decl., Ex. E. The Supreme Court in *County of Los Angeles v. Mendez* foreclosed this path toward a viable civil rights claim by ending the provocation theory. 137 S. Ct. 1539 at 1547. Even before the Supreme Court abrogated the provocation theory, the Ninth Circuit in *Billington v. Smith* rejected similar opinions offered by plaintiff's expert D.P. Van Blaricom. *See, e.g.*, 292 F.3d at 1182 (not calling for backup).

In order for the jury to properly interpret DeFoe's opinions, they must be instructed on the fact that the provocation theory is no longer permitted under the caselaw. Defendants propose the following instruction:

> Jury Instruction—No Provocation Rule
>
> Once an officer's use of force is deemed reasonable under the Fourth Amendment, it may not be found unreasonable by reference to some separate act preceding the use of force, unless the officer intentionally or recklessly provokes a violent confrontation. If you find that Officer Donald intentionally or recklessly provoked a violent response in the plaintiffs, then a reasonable use of defensive force, may be deemed by you unreasonable. In developing a tactical plan, an officer is not required to use the least intrusive means of responding to a police call. To provoke a violent response, the officer's tactical plan must be excessive and reckless, and done in conscious disregard of better police practices.
>
> *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002); *see also, County of Los Angeles v. Mendez*, 137 S. Ct. at 1546-1547, 198 L.Ed.2d 52 (2017); *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443. (1989).

Defendants' Proposed Instruction No. 22.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

**B.    Plaintiffs' Unconstitutional Failure to Train Claim.**

The parties agree on the instructions regarding the alleged failure to train constitutional claim (Ninth Circuit Model Instructions, 9.5 & 9.8), however the jury should also be instructed as to causation regarding this claim.

"Under *Monell v Dep't of Social Health Services of the City of New York.* 436 U.S. 658 (1978), a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but for and proximate causation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012). Regardless of what theory the plaintiff employs to establish municipal liability— policy, custom, or failure to train— the plaintiff must establish an affirmative causal link between the municipal policy or practice and the alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 385, 391-92 (1989); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

In *Oviatt v. Pearce*, 954 F.2d 1470, 1481 (9th Cir. 1992), the Ninth Circuit approved the trial court's "moving force" instruction on causation in a § 1983 Monell claim as follows:

> The district court instructed the jury that "in order for [the policy] to be the cause of injury, you must find that it is so closely related as to be the moving force causing the ultimate injury." Because this instruction closely tracks the language in City of Canton, we find that it correctly stated the law and adequately covered the issue of causation. See City of Canton, 489 U.S. at 391 ("the identified deficiency in a city's training program must be closely related to the ultimate injury.") (emphasis in original).

Defendants request a similar instruction in this case based upon this caselaw:

> The plaintiffs must establish an affirmative causal link between the alleged failure to train and the alleged constitutional violation.

> In order for an alleged failure to train to be the cause of injury to Plaintiffs, you must find that it is so closely related as to be the moving force causing the ultimate injury.

Defendants' Proposed Instruction No. 18.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

**C.      Plaintiffs' Negligence Claims.**

      1.      <u>The Fact that Plaintiffs were Engaged in the Commission of a Felony and were intoxicated at the time of the incident are Complete Defenses to their State Law Claims.</u>

In addition to its federal claims, the Plaintiffs also have a claim of negligence against Officer Donald and the Olympia Police Department. In light of these claims, the jury should receive a series of instructions, which provide the Defendants to complete defenses to these claims. Because both Defendants were found guilty of Assault, the jury should be instructed that it is a defense for damages that the person injured was engaged in the commission of a felony at the time of the injury.

      Felony—Designation Of

      Assault is a felony. Both Plaintiffs were convicted of Assault for their actions against Officer Donald.

Washington Practice Instruction Criminal (WPIC) 2.09, Defendants' Instruction No. 9.

      Felony—Defense

      It is a defense to any claim for damages that the person injured was then engaged in the commission of a felony, if the felony was a proximate cause of the injury.

WPI 16.01, Defendants' Proposed Instruction No. 10.

      Definition of Assault

      An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

      An assault is also an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.

      An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

      Both Plaintiffs were convicted of Assault.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

WPIC 35.50, Defendants' Proposed Instruction No. 24.

Additionally, the fact that both Plaintiffs were intoxicated and under the influence of marijuana provides an additional defense for Officer Donald to Plaintiffs' claims:

Intoxication of Person Injured—Defense

It is a defense to an action for damages for personal injuries that the person injured was then under the influence of alcohol, marijuana or any drug that this condition was a proximate cause of the injury, and that the person injured was more than fifty percent at fault.

WPI 16.03.

Defendants' Proposed Instruction No. 11.

2.     Officer Donald did not have a Duty to Retreat.

There is no duty to retreat in Washington for *anyone*, much less police officers. *State v. Wooten*, 87 Wn. App. 821, 825, 945 P.2d 1144, 1146 (1997).[3] In Washington, a victim of assault (and we know that is what Officer Donald was as a matter of law[4]) "has no duty to retreat from a place the person has a right to be and that a person may stand his or her ground and use lawful force to defend against an attack when the person has a reasonable belief that he or she is being attacked." *Id.* at 824-25. That is the situation Officer Donald found himself in when Expert DeFoe says Officer Donald should have remained hidden or fled from his assailants/Plaintiffs. *Cooley Decl.*, Exs. A-D. He had no duty to retreat. *See id.*

Officer Donald's job only served to heighten his right and *duty* to stand his ground and enforce the law against Plaintiffs, who had recently committed crimes. *See* RCW 10.31.100(1); *State v. Brown*, 36 Wn. App. 166, 168, 672 P.2d 1268, 1269 (1983); *Mike v. Tharp*, 21 Wn. App. 1, 5, 583 P.2d 654, 656 (1978) (approving jury instruction, "A police officer not only has the specific duty to enforce the law, but is also charged with the general duty and power to maintain the peace and quiet of the city."). Expert DeFoe admitted this in

---

[4] *Cooley Decl.*, Exs. A-D (Dkt. 42).

DEFENDANTS' TRIAL BRIEF - 16
3:18-cv-05267-RBL

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

his deposition. *DeFoe Dep.*, 100:23-101:6.

In light of this, the jury should also be instructed as follows:

Duty of a Police Officer Instruction

A police officer not only has the specific duty to enforce the law, but also a duty to stand his ground and has the power to maintain the peace and quiet of the city.

*State v. Brown*, 36 Wn. App. 166, 168, 672 P.2d 1268, 1269 (1983); *Mike v. Tharp*, 21 Wn. App. 1, 5, 583 P.2d 654, 656 (1978).

Defendant's Proposed Instruction No. 23.

Lawful Force—No Duty to Retreat

Police Officers have no duty to retreat. It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force.

The law does not impose a duty to retreat.

WPIC 17.05

Defendants' Proposed Instruction No. 8.

Lawful Force—Defense of Self, Others, Property

It is a defense to state law claims of negligence and outrage that the force used was lawful as defined in this instruction.

The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.

The Plaintiffs have the burden of proving that the force used by the Defendant was not lawful.

WPIC 17.02 (modified)

Defendants' Proposed Instruction No. 7.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

The jury should also be instructed on the how to determine whether an officer used reasonable care in using deadly force:

> For purposes of the claims under state law, in determining whether a law enforcement officer exercised reasonable care in using deadly force, you should consider the totality of the circumstances which preceded the use of deadly force, including the officer's tactical conduct and decisions before the use of force. An officer in making a decision to use deadly force is entitled to rely on circumstances as they reasonably appear to him.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight. In addition, as long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the "most reasonable" action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence.

> *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 305 P.3d 252, 160 Cal. Rptr. 3d 684 (2013);*Green v. Cty. of Riverside*, 238 Cal. App. 4th 1363, 1371, 190 Cal. Rptr. 3d 693, 701 (2015) ; Cal. Jury Instr.--Civ. 3.43.

Defendants' Proposed Instruction No. 27.

**D.    The Jury Must Receive Full Instructions on Plaintiffs' Outrage Claim.**

In their proposed instructions, Plaintiffs omitted two key Washington Practice Outrage instructions. The jury should receive the entire set of instructions including the below instructions regarding burden of proof and the definition of extreme and outrageous conduct:

> Outrage—Burden of Proof

> On plaintiff's outrage claim, the plaintiff has the burden of proving each of the following propositions:

> (1)    That the defendant engaged in extreme and outrageous conduct;

> (2)    That the defendant's conduct caused severe emotional distress to the plaintiff;

> (3)    That the defendant intentionally or recklessly caused the emotional distress; and

> (4)    That the plaintiff was a direct recipient of the extreme and outrageous conduct.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

If you find from your consideration of all the evidence that each of these propositions has been proved, your verdict should be for the plaintiff on the outrage claim. On the other hand, if you find that any of these propositions has not been proved, your verdict should be for the defendant on this claim.

WPI 14.03.01

Defendants' Proposed Instruction, No. 13 . Additionally:

Outrage—Extreme and Outrageous Conduct—Definition

Conduct may be considered extreme and outrageous only when the conduct is so extreme in degree and outrageous in character as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

In deciding whether the defendant's conduct was extreme and outrageous, you should consider all the evidence bearing on the question and may consider, among others, the following specific factors:

(1)     the position occupied by the defendants;

(2)     whether the plaintiff was particularly susceptible to emotional distress, and if the defendant knew of this fact;

(3)     whether the defendant's conduct may have been privileged under the circumstances;

(4)     whether the degree of emotional distress caused by the defendant was severe as opposed to mere annoyance, inconvenience, or normal embarrassment; and

(5)     whether the actor was aware that there was high probability that his or her conduct would cause severe emotional distress and proceeded in a conscious disregard of it.

WPI 14.03.02; *Jane Doe v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 141 Wn. App. 407, 429–30, 167 P.3d 1193 (2007).

Defendants' Proposed Instruction No. 14.

**E.     Punitive Damages.**

1.     <u>Standard for imposition.</u>

The U.S. Supreme Court has concluded that, "A jury may be permitted to assess punitive damages in an action under Section 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others." *Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75

DEFENDANTS' TRIAL BRIEF - 19
3:18-cv-05267-RBL
1002-00881/452148.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

L.Ed.2d 632 (1983).

Defendants do not believe there will be enough evidence for this claim to be sent to the jury.

2. <u>Fourth amendment claim.</u>

This standard for imposing punitive damages does not create any issues in the Fourth Amendment claim brought by the Plaintiffs.

3. <u>Defendant Donald's net worth.</u>

The Court must also instruct the jury that it must consider the Officer Donald's net worth in determining an appropriate amount of punitive damages. Long ago, the Ninth Circuit held that a defendant's wealth, or lack thereof, is "an important factor for the jury to consider in awarding damages designed to punish…." *Fountila v. Carter*, 571 F.2d 487, 492 (9th Cir. 1978). The Supreme Court in *Smith v. Wade* also observed that an award of punitive damages must be "based on [defendant's] personal financial resources…." *Smith v. Wade,* 461 U.S. at 36.

4. <u>No evidence regarding potential for indemnification.</u>

The Ninth Circuit has held that allowing Plaintiffs' counsel to make any reference to indemnification for punitive damages is grounds for a new trial. *Larez v. Holcomb*, 16 F.3d 1513, 1521 (9th Cir. 1994). "The possibility that a public entity may pay that part of a judgment that is for punitive damages shall not be disclosed in any trial in which it is alleged that a public employee is liable for punitive or exemplary damages, and that disclosure shall be grounds for a mistrial." *Id.*

DATED: September 3, 2019

        KEATING, BUCKLIN & McCORMACK, INC., P.S.


        By: */s/ Andrew Cooley*
        Andrew Cooley, WSBA #15189
        Kimberly J. Waldbaum, WSBA #31529
        Attorney for Defendants

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

801 Second Avenue, Suite 1210
Seattle, WA  98104
Phone:  (206) 623-8861
Fax:     (206) 223-9423
Email:  acooley@kbmlawyers.com
Email:  kwaldbaum@kbmlawyers.com

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs**

Monte Bersante, WSBA #17083
Brian M. King, WSBA #29197
Davies Pearson PC
920 Fawcett
PO Box 1657
Tacoma, WA 98401-1657
Email:  mbersante@dpearson.com
        bking@dpearson.com
        mlucente@dpearson.com - LA


Sunni Y. Ko, WSBA #20425
The Law Office of Sunni Ko
1105 Tacoma Ave S
Tacoma, WA 98402-2031
Email:  sunni@sunnikolaw.com


DATED:  September 3, 2019


                          */s/ Andrew Cooley*
                          Andrew Cooley, WSBA #15189
                          Attorney for Defendants
                          801 Second Avenue, Suite 1210
                          Seattle, WA  98104
                          Phone: (206) 623-8861
                          Fax:    (206) 223-9423
                          Email: acooley@kbmlawyers.com

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX:  (206) 223-9423